UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SHECARA JAMES,

        Plaintiff,

   -v-                                    No.  13CV4568-LTS-KNF

MUNICIPAL CREDIT UNION,

        Defendant.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

      Pro se plaintiff Shecara James ("James" or "Plaintiff") brings this action against Municipal Credit Union ("MCU" or "Defendant"), asserting claims of unlawful discrimination, retaliation and hostile work environment based on race, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), and disability, pursuant to the Americans with Disabilities Act ("ADA").[1]  MCU has moved for summary judgment, seeking dismissal of all of Plaintiff's claims.  The Court has jurisdiction of this action under 28 U.S.C. § 1331.  The Court has considered the parties' submissions carefully.[2]  For the reasons stated below, MCU's motion for summary judgment is granted in its entirety.

---

[1] Although Defendant MCU offers an argument seeking summary judgment with respect to purported claims of negligence, MCU concedes that "Plaintiff's Amended Complaint does not explicitly plead a claim for negligence."  (See Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Memo") at pp. 23-25.)  The Court does not read Plaintiff's Amended Complaint to make any such claims.  Therefore, the Court will not address that aspect of MCU's motion.

[2] MCU's submissions include a copy of the notice served on Plaintiff pursuant to Local Civil Rule 56.2 of the Southern District of New York, advising her of the consequences of summary judgment motion practice as well as her obligation to respond to the motion with evidentiary submissions.  (See Docket Entry No. 24.)

BACKGROUND[3]

Municipal Credit Union is an institution that provides banking and financial services.  (Def. 56.1 St. ¶ 8.)  Plaintiff was hired by MCU as a teller on or about February 28, 2011, and was initially assigned to work at MCU's Co-Op City branch.  (Id. ¶¶ 9, 11.)  In this capacity, Plaintiff assisted MCU members with their daily banking needs.  (Id. ¶ 12.)  Plaintiff alleges that, on January 25, 2012, a coworker named Heather Lashley pushed a rolling chair into Plaintiff, causing an injury to her shoulder.  (Id. ¶ 25; Amended Complaint ("Am. Compl."), Docket Entry No. 4, at ECF p. 13.)[4]  Because of this incident and the resulting injury, Plaintiff took a leave of absence from MCU from January 26, 2012 through June 10, 2012.  (Def. 56.1 St. ¶ 28; Am. Compl. at ECF pp. 6-8, 13.)  Plaintiff claims that the injury caused her to suffer both back and shoulder pain.  (See Am. Compl. at ECF p. 13.)

Plaintiff returned to work on June 11, 2012.  (Def. 56.1 St. ¶ 31.)  During Plaintiff's absence, her teller position at MCU's Co-Op City branch had been filled.  (Id. ¶ 33.)

---

[3] Facts recited as undisputed are identified as such in the Defendant's statement pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer.  Citations to the Defendant's Local Civil Rule 56.1 Statement ("Def. 56.1 St.") incorporate by reference the Defendant's citations to underlying evidentiary submissions.  Because Plaintiff did not file an opposing Rule 56.1 Statement, or proffer evidence controverting the factual assertions in Defendant's Rule 56.1 Statement, the Court considers the facts set forth in Defendant's Rule 56.1 Statement as undisputed for the purposes of this motion.  See Fed. R. Civ. P. 56(e)(2); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998) ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party.") (internal citations omitted).

[4] For the purposes of the instant motion practice, the Court also deems as true the well-pleaded allegations in Plaintiff's Amended Complaint, as well as the facts proffered in her Affirmation in Opposition to Defendant's Motion for Summary Judgment (Docket Entry No. 29, "Opp. Aff."), both of which were sworn to under penalty of perjury.  "Mere conclusory statements" included in these pleadings, however, have not been accepted as true.  See e.g., Ashcroft v. Iqbal, 555 U.S. 662, 678 (2009).

Plaintiff was therefore reassigned to another branch in the Bronx, where she retained the same job title. (Def. 56.1 St. ¶ 33.) Despite Plaintiff's injury, she was cleared to return to work "full duty and no restrictions," a fact that she acknowledged at her deposition. (See Affirmation of Dena E. Epstein in Support of Defendant's Motion for Summary Judgment ("Epstein Aff."), Ex. 3, Deposition of Shecara James, 95:5-8, 96:21-24; Ex. 14, note from Orsuville Cabatu, M.D.) In her Amended Complaint, however, Plaintiff alleges that she was under doctor's orders to not lift more than five pounds, and claims that she brought this limitation to her manager's attention upon reporting back to work. (See Am. Compl. at ECF p. 13.) Her manager, Neida Vargas ("Vargas"), thereafter contacted MCU's human resources department to confirm whether Plaintiff had been returned to work with or without restrictions. (Def 56.1 St. ¶ 37.) Plaintiff implies that her limitation prevented her from lifting her cash box because she was required to keep a certain number of rolls of quarters in the box that caused it to be heavier than 5 pounds. (See Opp. Aff. at pp. 7-9.) Nonetheless, Plaintiff admitted in her deposition that she never asked anyone to assist her in lifting her cash box and that, following her return from medical leave, she was never unable to lift her cash box. (Def. 56.1 St. ¶¶ 40-41.)

    Plaintiff further claims that, during her time at the Bronx branch, she faced race-based discrimination from her Hispanic co-workers and supervisors. (See Am. Compl. at ECF pp. 13-14.) Plaintiff alleges that the branch manager, Vargas, made fun of "the way [she] was hurt at work" by pantomiming hitting her with a cash box lid, causing her to be humiliated in front of her co-workers. (See Am. Compl. at ECF p. 14; Def. 56.1 St. ¶¶ 45-46.) Plaintiff further alleges that another Hispanic coworker, Sylvia Abril ("Abril"), "never liked [her] because of [her] race," and threatened to kick her one day after she made an error. (See Am. Compl. at ECF p. 14.) She also alleges that she was subjected to general mistreatment, such as

being told to "shut up," and being excluded from employee events like "Wear Red Day" and "Jeans Day."  (Am. Compl. at ECF p. 14.)  However, in her deposition, Plaintiff admitted that neither Abril nor Vargas made any race-based comments to her (Def. 56.1 St. ¶¶ 100, 105.)  Furthermore, Plaintiff had received a copy of MCU's Employee Handbook, which expresses a commitment to "equal employment opportunity to qualified individuals despite their race, color . . . [or] physical or mental handicap."  (See Def. 56.1 St. ¶¶ 13-14.)  The handbook also includes a dedicated section on the ADA that includes a discussion of the statute's reasonable accommodation requirement.  (Id. ¶ 17.)  However, Plaintiff never alleges that she complained about any discrimination based on race or disability to any management or human resources official at MCU.  (See generally Am. Compl.)  Plaintiff also was familiar with MCU's Code of Ethics, which required avoidance of "conflict of interest" and required "honesty and integrity."  (Def. 56.1 St. ¶ 15.)

On July 13, 2012, after she had been back at work for 23 days, Plaintiff commenced a second leave of absence based on her shoulder injury.  (Def. 56.1 St. ¶ 47.)  In November 2012, Plaintiff had arthroscopic surgery on her shoulder.  (See Am. Compl. at ECF pp. 11-13.)  Her treating physician later determined for worker's compensation purposes that Plaintiff suffered "35% schedule loss of use to the right shoulder."  (Id. at ECF p. 9.)  She returned on January 28, 2013, once again cleared, as she admitted in her deposition testimony, to work without restriction.  (Def. 56.1 St. ¶¶ 48, 50-51.)  On March 7, 2013, a performance improvement plan was discussed with Plaintiff and, as a result, she was placed on probation through June 7, 2013.  (Id. ¶ 52.)  On March 28, 2013, she received another performance improvement plan, which recommended that any cash passed through the teller window be counted using the "hand to table" method.  (Id. ¶¶ 55-56, 59.)  On April 23, 2013, Plaintiff took a

third leave of absence, from which she returned on May 13, 2013, once again with no restrictions. (Def. 56.1 St. ¶¶ 62-65.)

On May 15, 2013, a female customer approached Plaintiff's teller window to deposit cash. (Id. ¶ 66.) Plaintiff admitted in her deposition that she failed to do hand to table counting of the deposit, as required by her performance improvement plan. (Id. ¶ 67.) Plaintiff next assisted a gentleman with a withdrawal. (Id. ¶ 69.) Concurrently, the female customer she had assisted with the deposit began to complain to Plaintiff that her deposit receipt was $40 short. (Id. ¶ 70.) Plaintiff admitted in her deposition that, had she done hand to table counting, she likely would not have committed this error. (Id. ¶ 82.) While the female customer was complaining, the gentleman returned and gave Plaintiff $40 back. (Id. ¶ 71.) The female customer told Plaintiff that the $40 was likely from the money that she had given Plaintiff to deposit. (Id. ¶ 73.) Plaintiff nonetheless put the money returned by the gentleman into her back pocket, despite her knowledge that MCU policy forbids accepting tips. (Id. ¶¶ 77-78.) At her deposition, Plaintiff testified to her belief that she had received a tip from the gentleman, or his phone number. (Id. ¶¶ 75-76.) After receiving a complaint from the female customer, MCU investigated the incident and terminated Plaintiff's employment. (Id. ¶ 83.) Although Plaintiff was not aware of who made the ultimate decision to terminate her, the decision was communicated to her by David Sumner and Kim Thompson, both of whom are African American. (Id. ¶¶ 83-84.)

Plaintiff filed an intake questionnaire with the Equal Employment Opportunity Commission on June 12, 2013, in which she asserted claims of race and disability-based discrimination. (Id. ¶¶ 1, 3.) On June 24, 2013, Plaintiff received a Notice of Right to Sue from the EEOC, informing her that her file was being closed because the EEOC could not find that

she had established violations of the applicable anti-discrimination statutes. (Am. Compl. at ECF p. 5.) Plaintiff also grieved her termination through her union, Local 153. (Def. 56.1 St. ¶ 119.) Local 153 ultimately decided against bringing Plaintiff's case to arbitration, on the belief that there was no likelihood of success. (Id. ¶ 122.) Plaintiff thereafter filed this action, on June 28, 2013. (See Docket Entry No. 1.) In January 2014, Plaintiff applied to the Court for appointment of pro bono counsel. (See Docket Entry No. 14.) On May 13, 2014, Magistrate Judge Kevin N. Fox issued a Memorandum and Order denying Plaintiff's request for counsel, finding that the majority of her claims were not likely to be of substance. (See Docket Entry No. 16.) Defendant MCU subsequently filed the instant motion for summary judgment. (See Docket Entry No. 20.)

DISCUSSION

Summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Thus, the claims of a party who is unable to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will be unable to survive a Rule 56 motion. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating the absence of a material fact, and the court must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'" Marvel Entertainment, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir.

1993)).  For the purposes of summary judgment motion practice, a fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).  "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  "As to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case."  Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

Plaintiff's Title VII Claims

        Plaintiff alleges that she faced discrimination by her supervisors based on her race on several occasions.  In situations where no direct evidence of discrimination has been proffered, courts apply the three-step burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See e.g., Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003); see also Pronin v. Raffi Custom Photo Lab, Inc., 383 F. Supp. 2d 628, 634 (S.D.N.Y. 2005) ("In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case usually relies on the three-step McDonnell Douglas test.").  This test requires the plaintiff to establish a prima facie case of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  See e.g., Arnow v. Aeroflot Russian Airlines, 980 F.

Supp. 2d 477, 483 (S.D.N.Y. 2013) (citing Stratton v. Dep't for Aging for N.Y.C., 132 F.3d 869, 879 (2d Cir. 1997)).  Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for its actions.  See Stratton, 132 F.3d at 879.  If defendant is able to provide such a reason, the presumption of discrimination raised by the prima facie case is rebutted and the plaintiff must show, on the basis of all of the evidence presented, that it is more likely than not that the employer's decision was, in fact, motivated by discrimination.  See id. (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11 (1993)).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

>Defendant MCU concedes, for the purposes of this motion practice, that Plaintiff can demonstrate that she was a member of a protected class (African American) and that she was qualified and able to perform the duties of her position satisfactorily.  (See Def. Memo at p. 5.)  MCU argues, however, that Plaintiff cannot demonstrate that she was subjected to an adverse employment action or that, even if she could make that showing, she would not be able to show that the action occurred under circumstances giving rise to an inference of discrimination.  Furthermore, MCU argues that it has proffered a legitimate, nondiscriminatory reason for terminating Plaintiff, and that she cannot demonstrate that the reason given is a mere pretext for discrimination.

>*Title VII Discrimination*

>In the context of a Title VII claim, the Second Circuit "define[s] an adverse employment action as a 'materially adverse change' in the terms and conditions of employment."  Sanders v. New York City Human Resources Admin, 361 F.3d 749, 755 (2d Cir.

2004) (quoting <u>Richardson v. New York State Dep't of Corr. Serv.</u>, 180 F.3d 426, 446 (2d Cir. 1999)).  "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities' . . .  Examples of such a change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"  <u>Sanders</u>, 361 F.3d at 755 (quoting <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003).

<u>Alleged Discriminatory Treatment</u>

Here, Plaintiff has asserted that Neida Vargas, the Bronx branch manager, and Silvia Abril, the assistant branch manager, spoke in warmer tones to Spanish speaking co-workers; that Vargas pantomimed hitting her with a cash box lid; that Abril threatened to kick her after she made an error on a transaction; that she felt excluded from certain company activities; and that Abril made certain unspecified "negative" remarks toward her.  (<u>See</u> Am. Compl. at ECF p. 14; Def. 56.1 St. ¶¶ 88-89, 94-97.)  None of these acts is alleged to have resulted in termination, demotion, compensation or title change or any comparable "materially adverse change" in Plaintiff's employment status; thus none is sufficiently serious constitute an adverse employment action for the purposes of a Title VII discrimination claim.  Courts in this circuit have held that "adverse comments, criticism, threats to . . . employment, close scrutiny, [and] yelling . . . do not qualify" as adverse employment actions.  <u>See</u> <u>Sangan v. Yale University</u>, No. 03:06CV00587-PCD, 2008 WL 350626, at *5 (D. Conn. Feb. 7, 2008); <u>see</u> <u>also</u> <u>Sekyere v. City of New York</u>, 05CV7192-BSJ, 2009 WL 773311, at *4 (holding that defendants' "yelling and screaming" at plaintiff was not a materially adverse employment action).  Thus, Plaintiff has failed to proffer any evidence demonstrating that she suffered an adverse employment action at

the hands of her supervisors.  The Court therefore grants summary judgment to MCU and dismisses Plaintiff's Title VII claims of racial discrimination based on these alleged actions of these supervisors.

### Termination of Plaintiff's Employment

Defendant MCU concedes that the termination of Plaintiff's employment was an adverse employment action for the purposes of Title VII discrimination analysis.  (See Def. Memo at p. 6.)  MCU argues, however, that "Plaintiff still cannot establish a prima facie case of race discrimination because her termination did not occur under circumstances giving rise to an inference of discrimination."  (Id.)  The Court agrees.  "Although courts in this Circuit have recognized that there is no rigid rule about what circumstances allow an inference of discrimination, a plaintiff must come forward with some evidence, beyond merely stating that he is a member of a protected class who suffered an adverse employment decision."  Williams v. Padilla, Inc., 07CV7720-CM, 2009 WL 362100, at *7 (S.D.N.Y. Feb. 10, 2009) (internal quotation marks and citation omitted).  The Second Circuit has provided some guidance on the contours of this inquiry, holding that "[t]he circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . [or] preferential treatment given to employees outside the protected class."  Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996) (internal citations omitted); see also Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994) (citing "employer's criticism of the plaintiff's performance in ethnically degrading terms," and "invidious comments about others in the employee's protected group," as evidence giving rise to an inference of discrimination).

Plaintiff has proffered no evidence linking her termination to any racial motive,

nor pointed to any evidence of racial hostility beyond her own conclusory statements and assumptions.[5] She notes that she felt that some of her coworkers "never liked [her] because of [her] race," but fails to substantiate this assertion with any evidence of race-related words or actions. She does not allege that her coworkers made any racial remarks towards her (Def. 56.1 St. ¶¶ 100, 105), and does not proffer any evidence that the individuals who told her that she had been terminated – both of whom were African American – acted with any racial animus. (Id. ¶¶ 84, 86.) See Drummond v. IPC Intern., Inc., 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) ("a well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class."). Furthermore, as MCU points out, Plaintiff does not allege that any non-African American employees were treated more favorably than she was; rather, she alleges that other African American employees – members of the same protected class – were treated more favorably than she was. (Def. 56.1 St. ¶ 86.)

Because Plaintiff has proffered no evidence that raises an issue of material fact for trial linking her termination with racial discrimination, the Court grants MCU's motion for summary judgment insofar as it seeks dismissal of her discrimination claim based on her termination.

*Title VII Hostile Work Environment Claim*

Plaintiff's Amended Complaint, construed liberally, may be read to assert a hostile work environment claim. "In order to prevail on a claim for hostile work environment under Title VII, a plaintiff must demonstrate three elements: (1) that she was subjected to

---

[5] As Defendant points out, Plaintiff does not even allege that she was terminated due to her race. (See Am. Compl. at ECF p. 14.)

conduct that was objectively severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment'; (2) that she subjectively perceived the environment to be hostile or abusive; and (3) that the offending conduct created an abusive environment because of the plaintiff's [membership in a protected group]." Murdaugh v. City of New York, No. 10CV7218-HB, 2011 WL 4001011, at *1 (S.D.N.Y. Sept. 1, 2011) (quoting Patane v. Clark, 508 F.3d 106, 112-14 (2d Cir. 2007)).  In analyzing the objective element of this test, a court will examine "the totality of the circumstances" which include "the frequency of the discriminatory treatment and its severity, whether the abuse was physical or mere verbal insult, and the extent to which the conduct interfered with the plaintiff's ability to perform at work." Cortes v. City of New York, 700 F. Supp. 2d 474, 485 (S.D.N.Y. 2010).

   Plaintiff's allegations regarding her treatment by Vargas and Abril; being left out of employee events; being yelled at by the HR department; and being "picked on" by other employees at the bank, even taken together, simply do not rise to the level of conduct that is so objectively pervasive or severe that it "altered the conditions" of Plaintiff's employment. Plaintiff presents no evidence that shows a pattern of consistent harassment or a single materially significant incident of race-based mistreatment, and she offers no evidence that these events interfered with her ability to perform her job.  Thus, Plaintiff has not raised a genuine issue of disputed fact with respect to the objective prong of the hostile work environment inquiry.  Nor has Plaintiff pointed to any information, beyond her own surmise, that any of these cited instances were precipitated by racial animus.  Plaintiff cannot construct a viable discrimination case based on a series of "non-racial personality clash[es]." See e.g., Regis v. Metropolitan Jewish Geriatric Center, No. 97CV0906-ILG, 2000 WL 264336, at *14 (E.D.N.Y. 2000). Because Plaintiff has raised no genuine issues of material fact with respect to at least two prongs

of the hostile work environment inquiry, the Court grants MCU's motion for summary judgment insofar as it seeks dismissal of this claim.

*Title VII Retaliation Claim*

"To establish a prima facie case of retaliation, [the plaintiff] must show that (1) she was engaged in protected activity; (2) [the defendant] was aware of that activity; (3) [the plaintiff] suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Shih v. JPMorgan Chase Bank, N.A., No. 10CV9020-JGK, 2013 WL 842716, at *5 (S.D.N.Y. March 7, 2013) (quoting Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012)). For the purposes of a Title VII retaliation claim, "[a] protected activity is one that protest[s] or oppose[s] statutorily prohibited discrimination." Kouakou v. Fideliscare New York, 920 F. Supp. 2d 391, 400 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). Such activities include instituting litigation or filing a formal complaint. See e.g., Giscombe v. New York City Dept. of Educ., 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014). Plaintiff has proffered no evidence that satisfies this first prong of the retaliation inquiry. Nowhere in her Amended Complaint, nor her Opposition Affirmation, does Plaintiff assert that she engaged in any type of "protected activity." The deficiency is fatal to her retaliation claim. (See generally Am. Compl.)

Construing her allegations liberally, the closest that Plaintiff comes to demonstrating that she engaged in a "protected activity" is her claim that she alerted Marcella Warner, the head teller at the Bronx branch, of the incident in which Abril threatened to kick her. (See id. at ECF p. 14.) Even assuming, arguendo, that this complaint constituted a "protected activity," Plaintiff has proffered no evidence that MCU was aware that she had engaged in this activity, nor that she suffered an adverse action that can be causally linked to the activity, as

required under Title VII.  See University of Texas Southwestern Med. Center v. Nassar, 133 S.

Ct. 2517 (2013).  The Court therefore grants MCU's motion for summary judgment insofar as it

seeks dismissal of Plaintiff's Title VII retaliation claim.

Plaintiff's ADA Claims

In her Amended Complaint, Plaintiff asserts that MCU discriminated against her based on her disability; failed to accommodate her disability; and retaliated against her for taking medical leaves of absence.  (See generally Am. Compl.; see also Def. 56.1 St. ¶ 1.)  MCU has moved for summary judgment dismissing each of these claims.

*Plaintiff's Disability Discrimination Claim*

"ADA employment discrimination claims are subject to the familiar burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green." Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006).  "To establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability."  Sista, 455 F.3d at 169.  (internal quotation marks and citation omitted).  If a prima facie case is made, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its action.  Id.  If the employer is able to articulate such a reason, the plaintiff must then show that the employer's proffered reason was mere pretext for a discriminatory motive. Id.

Defendant MCU argues that Plaintiff was not "disabled" within the meaning of

the ADA. "Not every impairment is a 'disability' within the meaning of the ADA; rather . . . the impairment must limit a major life activity and the limitation must be substantial." Rodriguez v. Verizon Telecom, No. 13CV6969-PKC-DCF, 2014 WL 6807834, at *4 (S.D.N.Y. Dec. 3, 2014) (citing Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005)). "The regulations implementing the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat. 3553, provide that an impairment constitutes a disability if 'it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.' 29 C.F.R. § 1630.2(j)(1)(ii)." See Rodriguez, 2014 WL 6807834, at *4; see also Glaser v. Gap Inc., 994 F. Supp. 2d 569, 575 (S.D.N.Y. 2014).[6] "The [relevant] regulations define the term 'substantially limits' to mean: '(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii)[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" McNamara v. Tourneau, Inc., 326 F. App'x 68, 69 (2d Cir. 2009) (summary order). Further, "a record of such an impairment; or being regarded as having such an impairment" also qualifies as being disabled under the terms of the statute. See 42 U.S.C.S. § 12102 (LexisNexis 2009).

Plaintiff offers no evidence that she suffered from an impairment that

---

[6] Under the ADA, major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working . . . Major life activities also may include the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Morris v. Town of Islip, No. 12CV2984-JFB-SIL, 2014 WL 4700227, at *9 (E.D.N.Y. Sept. 22, 2014) (internal quotation marks and citation omitted).

substantially limited any major life activity. Although Plaintiff has proffered evidence that she suffered an injury as a result of the chair-pushing incident (see Am. Compl. at ECF pp. 9, 11-12, 15),[7] and claims that her doctor set a lifting limitation of five pounds for her (id. at ECF p. 13), she has offered no evidence that the injury substantially limited her ability to perform any major life activity. To the contrary, MCU has provided evidence demonstrating that, on three separate occasions, Plaintiff's doctor returned her to work without any restrictions following her injury. (See Def. 56.1 St. ¶¶ 29-30, 38-39, 48, 50-51, 63-64.) MCU has also proffered evidence of Defendant's admission that her ability to perform her job was not substantially limited by her injury. (See Def. 56.1 St. ¶ 40-41.) Plaintiff has not proffered any evidence to controvert either of MCU's showings and, therefore, Plaintiff has failed to demonstrate that there is any material issue of fact as to whether she was disabled within the meaning of the ADA at any relevant time. For this reason, the Court grants MCU's motion for summary dismissal of Plaintiff's disability discrimination claim.[8]

*Adverse Employment Action*

Even assuming, arguendo, that Plaintiff had demonstrated that she was a qualified

---

[7] The fact that Plaintiff was found to have suffered a disability for the purposes of her worker's compensation award is not conclusive of whether she was disabled within the meaning of the ADA. See Schapiro v. New York City Dept. of Health, 25 F. App'x 57, 62 n.2 (2d Cir. 2001) ("While [Worker's Compensation Board findings] may establish a record of the physical impairment, they do not establish a record that the physical impairment created a substantial limitation," for the purposes of ADA claim analysis.).

[8] For the same reasons, the Court grants MCU's motion for summary judgment with respect to Plaintiff's failure to accommodate claim, which also requires a showing that Plaintiff was disabled within the meaning of the ADA. See e.g., Noel v. BNY-Mellon Corporation, No. 10CV9143-JSR, 2011WL4633884, at *2 (S.D.N.Y. Oct. 4, 2011) ("To make a prima facie case of failure to accommodate, a plaintiff must show '(1) that [she] is an individual who has a disability within the meaning of the statute . . .'") (quoting Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997)).

person with a disability within the meaning of the ADA, she is unable to demonstrate that she suffered an adverse employment action causally related to discrimination, which is essential to a prima facie case of discrimination. A careful reading of the Amended Complaint reveals two incidents that Plaintiff appears to assert as adverse employment actions suffered in response to her disability: MCU's transfer of Plaintiff to the Bronx branch, and Plaintiff's termination.

Plaintiff has not presented any evidence to show that her transfer to the other Bronx branch constituted a material, adverse change in the terms and conditions of her employment. Sanders, 361 F.3d at 755. She suffered no "decrease in wage or salary, [no] less distinguished title, [no] material loss of benefits, [and no] significantly diminished material responsibilities" as a result of her transfer to the other branch. Id. "Obviously, a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." See Galabya v. New York City Board of Educ., 202 F.3d 636, 641 (2d Cir. 2000) (quoting Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996)). Although MCU concedes that Plaintiff did have a longer commute and needed to alter her hours as a result of the transfer, Plaintiff has failed to controvert MCU's showing that she retained the same job upon her transfer to the other branch. (See Def. 56.1 St. ¶ 33.) Furthermore, Plaintiff has offered no evidence that her transfer was in any way linked to her disability. MCU, on the other hand, has offered uncontroverted evidence that she was transferred because her position at the Co-Op City branch had been filled during her four-and-one-half month injury absence. (See id.) Thus, Plaintiff has not raised any genuine fact issue as to whether her transfer to the Bronx branch was an adverse employment action that was linked in

any way with her disability.[9]

While MCU has conceded that termination of Plaintiff's employment constitutes an adverse employment action (Def. Memo at p. 6), Plaintiff has identified no facts that could support a reasonable inference that she was terminated because of any disability. Moreover, MCU has proffered evidence of a legitimate, non-discriminatory business reason for Plaintiff's discharge that Plaintiff has failed to rebut by providing any evidence from which a fact finder could rationally infer that MCU's proffered reason was a pretext for disability discrimination. MCU has proffered undisputed evidence that Plaintiff was terminated from her position as a teller due to theft, violating MCU's policy against accepting tips, and/or failing to follow MCU's banking procedures, showing that Plaintiff failed to adhere to "hand to table" deposit counting protocol and that, at a minimum, she accepted what she thought to be a tip from a customer although she knew that acceptance of tips was prohibited. (See Def. 56.1 St. ¶¶ 66-84.) Plaintiff therefore bears the burden of demonstrating that "the legitimate reasons offered by [MCU] were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. Plaintiff, however, has not provided a shred of evidence that MCU's proffered reason for her termination was a pretext for disability discrimination. Thus, Plaintiff cannot demonstrate that she was discriminated against as a result of her disability during her time at MCU's Bronx branch, and all

---

[9] Moreover, any claim that Plaintiff may assert based on her transfer to the Bronx branch is time-barred. Plaintiff was transferred to the Bronx branch on June 11, 2012. (Def. 56.1 St. ¶¶ 31, 33.) Pursuant to the ADA, a charge of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory act. See Foster v. (D.O.E.) Theatre Arts Production Co. School, No. 12CV3661-AT, 2014 WL 265787, at *4 (S.D.N.Y. Jan. 24, 2014) (citing Tewksbury v. Ottoway Newspapers, Inc., 192 F.3d 322, 325-29 (2d Cir. 1999)). Plaintiff, however, did not file her charge of discrimination with the EEOC until June 12, 2013, a date that falls outside of the relevant 300-day window. (Def. 56.1 St. ¶ 2.) Accordingly, any claim based on Plaintiff's transfer to the Bronx branch is time-barred.

such claims are appropriately dismissed.

### *Plaintiff's Retaliation Claim*

Plaintiff further claims that she was retaliated against under the ADA for taking disability leave. (See Am. Compl. at ECF pp. 3.) To establish a prima facie case of retaliation under the ADA, a plaintiff must demonstrate that "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." See Treglia v. Town of Manilus, 313 F.3d 713, 719 (2d Cir. 2002). If Plaintiff can establish a prima facie case, then burden would shift to MCU to demonstrate a legitimate non-discriminatory reason for the employment action, at which point Plaintiff would be required to demonstrate that MCU's proffered reason was mere pretext for discrimination. See Sista, 455 F.3d at 169.

While Plaintiff's request for an accommodation of her alleged five-pound lifting limitation may arguably be seen as a "protected activity" (see Weixel v. Bd. of Educ. Of City of New York, 287 F.3d 138, 149 (2d Cir. 2002) (seeking reasonable accommodation of a disability constitutes a protected activity under the ADA)), and her termination may constitute an adverse employment action, Plaintiff has proffered no evidence demonstrating any causal connection between her request for accommodation and her termination. Moreover, MCU has proffered a legitimate, non-discriminatory reason for her termination, which Plaintiff has been unable to rebut as pretextual. Thus, MCU is entitled to judgment dismissing the ADA retaliation claim as a matter of law, and the Court grants MCU's motion for summary judgment on this claim.[10]

---

[10] Because the Court has granted summary judgment with respect to all of Plaintiff's Title VII and ADA claims, MCU's argument seeking summary dismissal of Plaintiff's claim for punitive damages need not be addressed. (See Def. Memo at p. 25.)

CONCLUSION

For the foregoing reasons, Defendant MCU's motion for summary judgment seeking dismissal of each of the claims asserted in Plaintiff's Amended Complaint is granted in its entirety.

The Court certifies pursuant to 28 U.S.C. 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

This Memorandum Opinion and Order resolves docket entry number 20. The Clerk of Court is respectfully requested to enter judgment in Defendant's favor and close this case.

SO ORDERED.

Dated: New York, New York
February 19, 2016

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

Copy mailed to:
Ms. Shecara James
4354 Richardson Ave., Apt. 5C
Bronx, NY 10467